**United States District Court**
For the Northern District of California

**\*E-Filed: July 29, 2014\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KENNETH E. MARTZ and ANNA K. MARTZ, Trustees of the MARTZ FAMILY TRUST, U.T.D. 10/21/1993,<br><br>Plaintiffs,<br>v.<br><br>LEADING INSURANCE GROUP INSURANCE CO., LTD (UNITED STATES BRANCH), AND Does 1-25, inclusive,<br><br>Defendants. | No. C13-03815 HRL<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**[Re: Docket No. 19, 31]** |

Kenneth E. Martz and Anna K. Martz, Trustees of the Martz Family Trust (collectively, "Martz") sue Leading Insurance Group Insurance Company ("LIG") for its alleged breach of contract and breach of the implied covenant of good faith and fair dealing arising from its denial of coverage for mold and water damage to Martz's apartment building. Before any discovery took place, Martz moved for partial summary judgment on the issue of liability for breach of contract. *See* Dkt. No. 19. LIG opposed the motion. *See* Dkt. No. 23. Shortly thereafter, LIG moved for summary judgment on all claims. *See* Dkt. No. 31. Martz opposed. *See* Dkt. No. 43. The parties consented to having all matters proceed before the undersigned. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Based on the moving and responding papers, as well as the arguments of counsel at the hearing on March 4, 2014, 2014, the Court DENIES both motions.

## BACKGROUND

In July 2013, Martz discovered mold and water damage to several units in an apartment complex insured by LIG pursuant to the parties' Businessowners Coverage Form ("Policy"), an "all risk" policy, so called because it covers all risks not expressly excluded. The parties agree that three distinct perils acted in succession to cause the damage: (1) negligent installation of the plumbing; (2) erosion of a hot water pipe; and (3) leakage of hot water and steam. LIG denied coverage based on exclusions for: (1) "Negligent Work"; (2) "Wear and tear; Rust or other corrosion" (hereinafter, "Corrosion"); and (3) "Continuous or Repeated Seepage Or Leakage Of Water" (hereinafter, "Continuous Leakage").

The Negligent Work exclusion provides that "[LIG] will not pay for loss or damage caused by or resulting from [Negligent Work]. But if [Negligent Work] results in a Covered Cause of Loss, [LIG] will pay for the loss or damage caused by that Covered Cause of Loss." Policy, at ¶ I.B.3.c. A Covered Cause of Loss is any risk of direct loss not expressly excluded. *Id.* at ¶ I.A.3. The parties agree that the negligent installation of the plumbing constitutes Negligent Work within the meaning of the exclusion. However, they dispute whether the negligence resulted in a Covered Cause of Loss, i.e. whether the erosion of the pipe or the leakage of hot water and steam is a Covered Cause of Loss.

The Corrosion exclusion provides that "[LIG] will not pay for loss or damage caused by or resulting from [Corrosion] . . . . But if [Corrosion] results in a 'specified cause of loss' . . . [LIG] will pay for the loss or damage caused by that 'specified cause of loss.'" Policy, at ¶ I.B.2.*l*. "Specified causes of loss" include "water damage," which is defined as "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance . . . containing water or steam." *Id.* at ¶ I.H.12.c. Again, the parties agree that the erosion of the hot water pipe constitutes Corrosion, and the leakage of hot water and steam here falls within the definition of "water damage." Nevertheless, LIG disputes that the resulting leakage is a "specified cause of loss" as it contends that "specified causes of loss" are also subject to the policy's exclusions.

2

The Continuous Leakage exclusion provides that LIG "will not pay for loss or damage caused by or resulting from . . . continuous or repeated seepage or leakage of water, or the presence of or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more." *Id.* at ¶ I.B.2.p.  Here, the parties dispute whether the leakage did in fact occur for 14 days or more.

Under the "Additional Coverages" section, the Policy expressly provides "Limited Coverage For 'Fungi', Wet Rot Or Dry Rot," (hereinafter, "Fungi") which "only applies when the 'fungi', wet rot or dry rot are the result of a 'specified cause of loss' other than fire or lightning."  Again, the parties agree that the mold here constitutes "Fungi," but LIG argues that the mold was not caused by a "specified cause of loss" because other relevant exclusions, namely the Continuous Leakage exclusion, apply.

**LEGAL STANDARD**

A.  Summary Judgment

A motion for summary judgment should be granted if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses.  *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102.  The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.  *See id.*  A genuine issue of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the

governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

## DISCUSSION

The four policy provisions relevant here present four corresponding disputed issues now before the Court: (1) Negligent Work – whether the erosion of the pipe or leakage of hot water and steam resulting from the negligent installation of plumbing are Covered Causes of Loss; (2) Corrosion – whether the leakage of hot water and steam resulting from corrosion is a "specified cause of loss"; (3) Continuous Leakage – whether the leak did in fact last for 14 days or more; and (4) Fungi – whether the leakage of hot water and steam resulting in mold was a "specified cause of loss." As an initial matter, the Court must address a dispute over policy interpretation, a pure issue of law for the Court, which underlies the second and fourth issues – whether "specified causes of loss" are subject to the policy's exclusions, namely Continuous Leakage.

A. "Specified causes of loss"

The Corrosion provision expressly provides that where Corrosion causes a "specified cause of loss," including leakage of hot water or steam, LIG will provide coverage for the loss caused by that "specified cause of loss." Similarly, the additional coverage for Fungi provides coverage where the Fungi resulted from a "specified cause of loss." Thus, Martz asserts that, based on the plain meaning of the relevant provisions, the policy provides coverage for the resulting damage here because the erosion of the pipe (Corrosion) caused leakage of hot water or steam ("specified cause of loss"), and the leakage of hot water and steam ("specified cause of loss") resulted in mold (Fungi). However, LIG argues that the analysis cannot end there, as "specified causes of loss" are a narrow subset of Covered Causes of Loss and subject to the same exclusions, including Continuous Leakage. Accordingly, LIG asserts that because the leakage here lasted for 14 days or more,

4

Continuous Leakage applies and prevents the leakage here from qualifying as a "specified cause of loss."

"The rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995). "If contractual language is clear and explicit, it governs. On the other hand, if the terms of a promise are in any respect ambiguous or uncertain, it must interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it. This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of the insured. Only if this rule does not resolve the ambiguity do we then resolve it against the insurer." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264-65 (1992) (internal quotations omitted) (citations omitted). In cases involving all-risk insurance policies, "once the insured shows that an event falls within the scope of basic coverage under the policy, the burden is on the insurer to prove a claim is specifically excluded." *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989). "The exclusionary clause must be *conspicuous, plain and clear*." *MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 648 (2003) (internal quotation marks omitted).

With these principles of construction in mind, the Court disagrees with LIG's interpretation. There is simply no indication in the definition of "specified causes of loss" or the policy as a whole that "specified causes of loss" are a narrow subset of Covered Causes of Loss subject to the same exclusions. While Covered Causes of Loss are expressly defined by reference to the applicable exclusions, "specified causes of loss" are defined by an enumerated list of fourteen causes with no mention of the policy's exclusions. Moreover, because the term "specified cause of loss" is typically used in affirmative statements of coverage within the policy's exclusion provisions and as exceptions thereto, it is reasonable for an insured to expect that "specified causes of loss" are a distinct set of causes that are covered regardless of other exclusions. At the very least, that "specified causes of loss" are to be subject to exclusions is not "conspicuous, plain and clear," and LIG has not met its burden to show that the Continuous Leakage exclusion applies to the "specified cause of loss" that occurred here. Accordingly, the Court finds that where corrosion causes the

5

leakage of hot water and steam, the Policy provides coverage for the resulting damage. Likewise, where the leakage of hot water and steam causes mold, the resulting damage is covered.

### B. Negligent Work

The parties agree that the negligent installation of the plumbing is Negligent Work which resulted in the corrosion and leakage, and for the reasons discussed above, the Court finds that corrosion-caused leakage is a Covered Cause of Loss. Accordingly, Negligent Work resulted in a Covered Cause of Loss, and the resulting damage is covered under the Policy.

### C. Continuous Leakage

Having found that the Negligent Work and Corrosion provisions do not exclude, and purport to affirmatively provide, coverage for the resulting mold and water damage, the Court now turns to the third exclusion cited by LIG, Continuous Leakage. Here, the parties' dispute is purely a factual one as to whether the leak lasted for 14 days or more. In support of its assertion that the leak lasted 14 days or more, LIG provides the declaration of Steve Virostek, the engineer LIG hired to investigate the claim, who opines that the leak lasted for 4-7 weeks based on water usage records and other factors. Martz does not offer any evidence but objects to Virostek's assessment as impermissible expert testimony pursuant to Federal Rule of Evidence 702 because LIG has not demonstrated that he is qualified as an expert or that his methodology is reliable. LIG responds to Martz objection asserting that Virostek is not an expert but a percipient witness who participated in the factual investigation, and therefore Rule 702 does not apply. However, as a lay percipient witness only, Virostek may not opine as to the duration of the leak, which opinion was based on scientific, technical, or other specialized knowledge. *See* Fed. R. Evid. 701(c). Accordingly, neither party has admissible evidence as to the duration of the leak.

### D. Martz's Motion for Summary Judgment

Martz moves for summary judgment on the issue of liability for breach of contract only. Viewing the evidence in the light most favorable to LIG, the leak persisted for 14 days or more, and the Continuous Leakage exclusion applies. However, as discussed above, the Policy purports to provide coverage for loss resulting from corrosion-caused leakage, as well as the resulting damage when corrosion-caused leakage is itself the result of negligent work.

6

"Under California law, the 'efficient proximate cause' doctrine is 'the preferred method for resolving first party insurance disputes involving losses caused by multiple risks or perils, at least one of which is covered by insurance and one of which is not.'" *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 820 (9th Cir. 2014) (quoting *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 753 (2005). "[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause . . . is the cause to which the loss is to be attributed." *Julian*, 35 Cal. 4th at 754 (second alteration in original). "[T]he 'efficient proximate cause' of a loss is the predominant, or most important cause of a loss." *Id.* "[A]n insurer may not preclude application of efficient proximate cause analysis through inconsistent policy language." *Id.*

Based on the current record, the Court cannot say as a matter of law that any of the three perils, two of which are covered and one of which is not, is the predominating or most important cause, and the one to which the loss should be attributed. *See Garvey*, 48 Cal. 3d at 412 ("Coverage should be determined by a jury under an efficient proximate cause analysis."). Accordingly, Martz' motion for summary judgment is DENIED.

E.  LIG's Motion for Summary Judgment

LIG moves for summary judgment as to Martz's claims for breach of contract and breach of the implied covenant of good faith and fair dealing, as well as Martz's prayer for punitive damages. Viewing the facts in the light most favorable to Martz, the leak lasted less than 14 days, none of the policy exclusions apply, and LIG improperly denied Martz benefits on three separate bases. Accordingly, LIG is not entitled to judgment as a matter of law on the breach of contract claim.

As for Martz's bad faith claim, LIG asserts that the Court should grant it summary judgment because there exists a "genuine dispute" as to LIG's coverage obligations with respect to Martz's claims. Martz argues that the genuine dispute rule does not apply because LIG's interpretation of the policy is unreasonable, it materially misrepresented the policy terms in its denial letters, and it failed to reasonably investigate the claim with an intent to deny coverage. "The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for

example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. . . . On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 724 (2007) (alterations in original) (quoting *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161-62 (9th Cir. 2002). Here, under Martz's version of the facts, there is no genuine dispute as to the insurer's liability, and a jury could conclude that LIG acted unreasonably. Accordingly, LIG is not entitled to summary judgment on Martz's bad faith claim.

Finally, LIG moves for partial summary judgment as to Martz's prayer for punitive damages because it asserts that Martz cannot offer clear and convincing evidence to show oppression, fraud, or mistake, as required by Cal. Civil Code § 3294. However, while Martz may not have produced clear and convincing evidence to this point, this motion was brought prior to any discovery being conducted in this case, and based on the record now before the Court it would be premature to find that Martz *cannot* produce such evidence. Moreover, "[d]eterminations related to assessment of punitive damages have traditionally been left to the discretion of the jury." *Amdadeo*, 290 F.3d at 1165 (reversing grant of summary judgment against plaintiff on claim for punitive damages because there was "sufficient evidence that the denial of her claim was not simply the result of poor judgment, but rather resulted from [defendant's] plainly unreasonable interpretation of its policy and the deliberate restriction of its investigation in a bad faith attempt to deny benefits due." (citations omitted) (internal quotation marks omitted)). Accordingly, the LIG is not entitled to summary judgment on Martz's claim for punitive damages, and LIG's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: July 29, 2014

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

8

**C13-03815 Notice will be electronically mailed to:**

Alan Louis Martini     amartini@smtlaw.com, aobey@smtlaw.com

Julian J. Pardini     pardini@lbbslaw.com

Julian John Pardini     pardini@lbbslaw.com, danielle.brodit-terry@lewisbrisbois.com

Rowena Ching-Wen Seto     seto@lbbslaw.com, LIU@lbbslaw.com

Stephen James Liberatore     liberatore@lbbslaw.com, chung@lbbslaw.com, liu@lbbslaw.com, Rowena.Seto@lewisbrisbois.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**